ANNA, The, (OOLOGAARDT v.)
[See Oologaardt v. The Anna, Case No. 10,545.]

---

ANNA, The, (UNITED STATES v.)
[See United States v. The Anna, Cases Nos. 14,457 and 14,458.]

---

## Case No. 404.
### The ANNA KIMBALL.
[2 Spr. 33;[1] 23 Law Rep. 724; 8 Pittsb. Leg. J. 353.]

District Court, D. Massachusetts. April, 1861.[2]

MARITIME LIENS—FREIGHT—POSSESSION—WAIVER OF LIEN.

1. Maritime liens do not depend upon possession.

2. But if the owner of a vessel part with the possession of goods by delivering them to the consignee, he thereby loses his lien for freight.
[See note at end of case.]

3. An agreement between the shipper of goods and the carrier, by which a credit is given for the freight beyond the time of delivery, is a waiver of the lien for freight.
[See note at end of case.]

[In admiralty. Libel in rem by Edward Kimball, owner of the ship Anna Kimball, against the ship's cargo, (Alexander Duncan and others, claimants,) to enforce a lien for freight. Decree for claimant. Reversed by the circuit court in Kimball v. The Anna Kimball, Case No. 7,772, and decree entered for libellant which was afterwards affirmed by the supreme court in The Kimball, 3 Wall. (70 U. S.) 37.]

[1][Reported by John Lathrop, Esq., and here reprinted by permission.]

[2][Reversed by circuit court in The Kimball v. The Anna Kimball, Case No. 7,772, which decree was subsequently affirmed by the supreme court in The Kimball, 3 Wall. (70 U. S.) 37.]

This was a libel to enforce an alleged lien on the cargo of the ship Anna Kimball, for non-payment of the balance due upon the charter of the ship, amounting to about $10,-000. The terms of the charter and the other facts appear in the statement of the pleadings, and in the opinion of the court. The defence was placed upon two grounds: 1st. That the terms of the charter making the balance of the charter money due at the end of the voyage, payable one-half in five days, and one-half in ten days after the discharge of the homeward cargo, were inconsistent with the retention of the cargo as security for the payment of such balance. 2d. That the libellant had, during the voyage, received from the charterers their two notes on six months for $10,000, and that the credit thus given was inconsistent with the retention of the cargo necessary for the preservation of the lien, and that it therefore amounted to a waiver of the lien. To this ground of defence the libellant replied, that shortly after taking the charterers' notes, they became insolvent; and that he then offered to return them the notes, which they refused to receive, and that he had always been and was now willing to give up the notes.

R. H. Dana, Jr., for libelant.
Bartlett & Thaxter, for claimant.

SPRAGUE, District Judge. Maritime liens do not depend upon possession. This rule is almost universal, but there is one exception. If the owner of a vessel part with the possession of goods by delivering them to the consignee, he thereby loses his lien for freight. Such is the law at least in this circuit, it having been so declared by the circuit court, and followed by this court. And it has been held, that if an agreement be made between the shipper of goods and the carrier, by which a credit is given for the freight beyond the time when they are to be delivered to the shipper, the lien for freight is thereby waived; for in such case the carrier, being bound to deliver the goods before the freight is payable, must, in the performance of that contract, divest himself of the possession, and transfer it to the consignee without payment of the freight, and the lien must be thus terminated. In the present case, the libellant, on the 31st of August, 1857, took two notes for $10,000, payable in six months, for freight.

This necessarily gave a credit until the expiration of those notes. It was a new contract entered into by the parties for adequate consideration; both expected that the ship would arrive several months before the maturity of the notes, that is, before the freight would be payable, and both must have contemplated that the cargo would be delivered to the consignee upon arrival. There is no part of the agreement which indicates that the carrier was to hold on to the goods until the maturity of the notes,

and the parties must have understood that the cargo would be delivered in the usual time after arrival. It could not have been contemplated, that the owner of the goods should be kept out of the possession and control of them for several months, because he had for an adequate consideration obtained a credit for that time for the freight. The credit upon such a condition would be an injury rather than a benefit. This ship did not arrive as early as was expected, but she arrived more than a month before the expiration of the credit.

The cargo was in a condition to be delivered to the consignee, and the delivery was duly demanded by him before the freight was payable; but the carrier refused to deliver it unless the freight was first paid. This refusal was wrongful. He had by a valid agreement given a credit for the freight which had not then expired, and by so doing had agreed that he would deliver the goods and relinquish his lien, without payment of the freight; and he cannot, by violating his agreement and holding on to the goods, place himself in a situation to maintain a suit to enforce the lien which he had agreed to relinquish.

[NOTE. This decree was reversed by the circuit court in Kimball v. The Anna Kimball, Case No. 7,772, and the circuit court decree was affirmed by the supreme court in The Kimball, 3 Wall. (70 U. S.) 37. Mr. Justice Field, speaking for the court, held that the clause in the charter party requiring a delivery of the cargo within reach of the ship's tackle does not contemplate such a delivery as to discharge the cargo from the lien for freight, but only its unlading from the ship. "The clause was intended for the benefit of the charterers. It gives them ample time to examine the goods, and ascertain their condition, and decide whether they will take them and pay the freight, or decline to receive them;" and especially is the lien preserved by another clause in the charter party which binds the cargo for the performance of the covenants contained therein, of which the payment of the charter money is one. "The notes were given before the termination of the voyage, and, consequently, before the balance of the charter money became due. Treating them as an advance of a portion of the freight, they could be recovered back; or their amount, if paid, if the vessel did not arrive. Freight, being the compensation for the carriage of goods, if paid in advance, is in all cases, unless there is a special agreement to the contrary, to be refunded if from any cause not attributable to the shipper the goods be not carried. * * * The notes were drawn so as to mature near the time of the anticipated arrival of the ship; and, according to the statement of the broker who made the arrangement, they were given for the accommodation of the shipowner, and were to be held over or renewed in case they fell due before the arrival." This is sufficient to repel "any presumption of a discharge of the claim of the shipowner, and of his lien upon the cargo in this case, by his taking the notes of the charterers." The Kimball, 3 Wall. (70 U. S.) 37.]